**IN THE COURT OF APPEALS OF IOWA**

No. 17-1670
Filed January 10, 2018

**IN THE INTEREST OF N.D. & D.B.,**
**Minor Children,**

**V.D., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Susan Cox, District

Associate Judge.


        A mother appeals an order terminating her parental rights.  **AFFIRMED.**



        Robb D. Goedicke of Cooper, Goedicke, Reimer & Reese Law Firm, P.C.,

West Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

        Brent M. Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for

minor children.



        Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals a juvenile court order terminating her parental rights to her two children, N.D. and D.B., born in 2007 and 2010, respectively. She contends (1) the State failed to prove the statutory grounds for termination by clear and convincing evidence; (2) termination was not in the best interests of the children; and (3) a statutory exception should have precluded termination.

## I.      Background Facts and Proceedings

The mother came to the attention of the Iowa Department of Human Services (DHS) in November 2014 upon information that her paramour was using methamphetamine (meth) in the home and had cared for the children while under the influence of the same. The mother also tested positive for meth. It was also determined that the children's maternal grandmother was supervising them while under the influence of meth.

The mother continued to have a relationship with her paramour despite signing a safety plan in which she agreed to ostracize her paramour from her children. The State filed child-in-need-of-assistance (CINA) petitions as to both children and applied for removal. On January 22, 2015, the juvenile court ordered the children be placed in the legal custody of DHS. In February, the court modified its removal order and placed the children with their maternal grandfather. In March the children were adjudicated CINA. In June, due to the mother's progress in sobriety and cooperation with services, the State moved to have the children returned to their mother under DHS supervision. The court granted the motion on June 18. Less than a month later, however, the State moved to have placement of the children returned to their maternal grandfather,

noting, among other things, the mother's recent positive test for meth and her lack of involvement in therapy. Following a contested modification hearing, the mother was allowed to retain custody of the children but was subjected to additional restrictions and required to comply with additional services.

In September 2015, the State again moved for modification of placement due to another positive test for meth use. On September 3, the juvenile court granted the motion, removed the children from the mother's custody, and returned them to the custody of their maternal grandfather. As a result of the maternal grandfather's struggles in transporting the children, the children were subsequently placed with a family friend, B.F. Following a permanency hearing in January 2016, the juvenile court granted the mother a six-month extension to address her substance-abuse issues through treatment, demonstrate an ability to maintain a sober lifestyle, and make healthy relationship choices. Three days later, it was discovered the mother tested positive for meth. In April, the mother again tested positive for meth. Later in April, the juvenile court modified placement of the children, placing them with another family friend, M.B. On July 8, the juvenile court returned the children to the mother's custody.

In November 2016, there was a suspicious explosive fire at the family home that burned down the garage. The mother was present at the home at the time of the fire but did not call the fire department or law enforcement. During a subsequent search of the home, police officers found a glass pipe with white residue and a plastic bag containing what was believed to be meth. The mother admitted those items belonged to her. A "friend" of the mother's, K.K., was injured during the fire, and while being treated at the hospital, he tested positive

for meth. At this time, K.K. was also the subject of two arrest warrants. K.K. referred to the mother as his wife while being treated. In a subsequent interview with law enforcement, the mother conceded K.K. used to cook meth. Officers also observed signs of recent drug use on the mother's person. Law enforcement believed the garage fire resulted from a meth-lab explosion, but because the explosion destroyed the scene, evidence was unavailable to verify the same. The mother was subjected to a subsequent hair-stat drug test and provided negative results. The juvenile court, however, noted its concern that the mother had just colored her hair, which could cause a false-negative result. The mother agreed to stay away from K.K. and re-engage in services. The juvenile court allowed the mother to maintain custody of the children but subjected her to additional restrictions.

In January 2017, DHS issued a founded child-abuse report in relation to the mother allowing K.K. to supervise the children alone. Later that month, the mother was arrested and charged with interference with official acts and aiding and abetting a fugitive from justice. That day, she resisted and obstructed United States Marshalls and local law enforcement in their effort to execute an arrest warrant on K.K. by refusing to allow them into her home, where K.K. was located. On January 18, the juvenile court removed the children from the mother's care and placed them with M.B. The next day, the mother tested positive for meth. The mother continued to have contact with K.K. in jail. Many of their discussions concerned their future relationship together.

In June 2017, DHS amended its permanency goal to termination of the mother's parental rights followed by adoption of the children by M.B. The

juvenile court adopted the same as its primary permanency goal. The State subsequently petitioned to terminate the mother's parental rights. At the subsequent termination hearing in September, the mother conceded the children could not be returned to her custody at that time, as she needed to take care of some "underlying issues" before that could happen. She also acknowledged violating DHS and court directives and lying about her substance abuse and relationships with dangerous men throughout the proceedings. She asked the court for additional time to resolve her issues. The juvenile court ultimately terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2017). The mother appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

### A. Grounds for Termination

The mother argues, the juvenile court "erred when it determined there were sufficient grounds to terminate [her] parental rights." Under section 232.116(1)(f), the juvenile court may terminate parental rights if it finds the State has proven by clear and convincing evidence the children (1) are four years of age or older; (2) have been adjudicated CINA; (3) have been removed from the

physical custody of the parent for at least twelve of the last eighteen months; and (4) cannot be returned to the parent's custody at the time of the termination hearing.

In reviewing the mother's brief, we are unclear as to which of the four elements she challenges, as her argument under this issue solely concerns alternatives to termination. It is undisputed that both children are four years of age or older and have been adjudicated CINA. Also, the mother did not argue below, or specifically in this appeal, that the children have not been removed from her physical custody for at least twelve of the last eighteen months, so any possible challenge to that element was not preserved and is also waived on appeal. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (waiver); *In re J.B.L.*, 844 N.W.2d 703, 704–05 (Iowa Ct. App. 2014) (preservation of error). Finally, the mother's admission that the children could not be returned to her custody at the time of the hearing due to her "underlying issues" is sufficiently clear and convincing evidence to establish the final element. *See In re M.R.*, No. 14-1642, 2014 WL 7343520, at *2 (Iowa Ct. App. Dec. 24, 2014) (concluding a parent's admission that the child cannot currently be returned to their custody is sufficient for termination).

In reviewing the issues properly before us, we find sufficient evidence to support the termination of the mother's parental rights under Iowa Code section 232.116(1)(f).

B.      Bests Interests of the Children

We next consider whether "termination of parental rights would be in the best interest of the child under section 232.116(2)." *M.W.*, 876 N.W.2d at 224.

In support of her argument that termination is not in the children's best interests, the mother cites her strong bond with the children. It is undisputed that the mother shares a strong bond with the children; she has continued to care for them periodically throughout these proceedings, and the children want to be with her. It is problematic, however, that in the more than two-year span of this case, the mother repeatedly placed her substance abuse and desire to surround herself and her children with dangerous men before the well-being of her children. It is only happenstance that the children never suffered physical harm from the mother's behavior. The mother has been given opportunity after opportunity to put her children first and get clean, but she has repeatedly prioritized her vices, knowing full well of the consequences.

The evidence does not show when or if the mother will be able to become a suitable parent by conquering her drug addiction and avoiding relationships with dangerous men. The trend thus far, however, reveals the opposite. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

The children's potential adoptive parent has cared for them significantly throughout this case, and both children share a bond with him. Contrary to the mother, he provides them a stable and wholesome environment and is able to

tend to all of their physical and emotional needs on a consistent basis. We conclude termination is in the children's best interests. *Cf. M.W.*, 876 N.W.2d at 224–25 (concluding termination was in best interests of children where children were well-adjusted to home with their caregivers, the caregivers were "able to provide for their physical, emotional, and financial needs," and the caregivers were prepared to adopt the children).

C.     Statutory Exceptions to Termination

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude termination." *Id.* at 225. The application of these exceptions is "permissive, not mandatory." *Id.* (quoting *A.M.*, 843 N.W.2d at 113).

First, the mother argues "termination is not required when a relative has legal custody of the child." *See* Iowa Code § 232.116(3)(a). Problematic with this argument, however, is the fact that the child's current caregiver is not a relative. Although it was initially assumed M.B. was the children's paternal grandfather, the mother subsequently revealed M.B.'s son is not the father of one of the children in interest. DNA testing confirmed this revelation.

Next, the mother argues "because of the bond between [her] and her children, the [c]ourt need not terminate parental rights." We recognize the bond between the mother and children. We repeat our conclusion above that despite this bond, termination is in the best interests of the children. We therefore affirm the termination of the mother's parental rights.

**AFFIRMED.**